**SO ORDERED.**

**SIGNED this 17th day of December, 2009.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHARLES BRYAN POWERS and | ) | Case No. 09-50513-LMC |
| MARY SUSAN POWERS, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | | |
| MANN BRACKEN, LLP f/k/a | ) | |
| WOLPOFF & ABRAMSON, LLP | ) | |
| and LVNV FUNDING, LLC | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Adversary No. 09-05043 |
| | ) | |
| CHARLES BRYAN POWERS | ) | |
| | ) | |
| Defendant | ) | |

**ORDER DENYING MANN BRACKEN, LLP AND LVNV FUNDING, LLC'S MOTION
FOR SUMMARY JUDGMENT**

1

Came on for consideration the foregoing matter. Mann Bracken, LLP f/k/a Wolpoff & Abramson, LLP ("Mann Bracken") and LVNV Funding, LLC ("LVNV," and together with Mann Bracken, the "Plaintiffs") filed a motion (the "Motion") in the above-captioned adversary proceeding seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, incorporated herein pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. The Plaintiffs ask that the court rule that, based upon an order entered pursuant to Rule 11 of the Federal Rules of Civil Procedure in a prior lawsuit in the District Court for the Western District of Texas sanctioning Charles Bryan Powers ("Powers" or the "Defendant"),[1] Powers is collaterally estopped from arguing that the sanction may be discharged in his chapter 7 bankruptcy. Because the Rule 11 sanction did not address the intent requirements of §523(a)(6), the Plaintiffs' motion is denied.

A. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are uncontested. Powers is an attorney licensed in Texas whose practice has included representing plaintiffs in class action lawsuits. Unfortunately for Powers (and his clients) he has been wholly unsuccessful – during his 30-year career, he has filed thirty-nine (39) class action lawsuits and has never won any of them. In fact, Powers has failed to win any type of relief for his clients in any of the 39 class action lawsuits.[2] Powers' saga in this adversary proceeding has its beginnings in one of those unsuccessful 39 class action claims. The story begins, as usual, in a decidedly commonplace fashion: LVNV hired Wolpoff (now Mann Bracken) to collect a debt allegedly owed by Gracie Lopez ("Lopez") in the amount of $3,818.36. In November 2007, Wolpoff sued Lopez in Guadalupe County and she was duly served. On June 9, 2008, Powers filed a class action lawsuit (the "Class Action Suit"),

---

[1] Although both Powers and his wife are debtors, this adversary proceeding only involves Mr. Powers. Thus, in referencing 'Powers' throughout this opinion, the court is only referring to Mr. Powers.

[2] Powers contests this finding in his affidavit filed in this adversary proceeding [Docket No. 13]. However, this fact is largely irrelevant for purposes of this summary judgment motion.

2

purportedly on Lopez's behalf, in Guadalupe County against LVNV and Wolpoff pursuant to 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

On July 1, 2008, LVNV and Wolpoff removed the Class Action Suit to the United States District Court for the Western District of Texas, Austin Division, and U.S. District Judge Sam Sparks was assigned the case. On July 22, 2008, Powers filed a motion for certification of the class (the "Certification Motion"). In preparation for responding to the Certification Motion, LVNV and Wolpoff deposed both Lopez and Powers on September 11, 2008 and September 12, 2008, respectively. At her deposition, Lopez stated the following: (i) she did not know what a class action was, (ii) she was not aware that the Class Action Suit had been filed; (iii) she did not know what it meant to be a class representative; (iv) she did not know what her duties were as a class representative; (v) she did not know that she was a plaintiff in a class action lawsuit; (vi) she did not know she was the class representative; (vii) she did not know that the Class Action Suit had been filed on her behalf; and (viii) she had never met or spoken to Powers until about one month before her deposition. Power, at his deposition, testified that: (i) he had unsuccessfully filed 39 class action lawsuits; (ii) he could not name the four requirements for certification of a class pursuant to F.R.C.P. 23; (iii) he believed a client could qualify as a plaintiff even if he or she does not know he or she is involved in a class action lawsuit; and (iv) he did not believe he had a duty to inform himself of the facts before he filed an allegation of numerosity.

On October 8, 2008, Judge Sparks entered an order holding that Powers had violated Rule 11 of the Federal Rules of Civil Procedure (the "Rule 11 Order")[3] when he filed the Certification Motion. In his Rule 11 Order, Judge Sparks made specific findings of fact drawn from the deposition testimony of both Powers and Lopez, tracking the summary in the previous

---

[3] The Rule 11 Order is attached to the Plaintiffs' Complaint as Exhibit 1.

3

paragraph. The same day the Rule 11 Order was issued, both LVNV and Wolpoff filed motions for sanctions pursuant to Rule 11. Later, on October 14, 2008, LVNV and Wolpoff filed a joint motion for sanctions pursuant to 28 U.S.C. § 1927. Lopez failed to respond to the individual sanction requests but did respond to the joint motion, through counsel. Judge Sparks ruled that the individual motions were unopposed and so granted both motions; he denied the joint motion as moot. On December 19, 2008, Judge Sparks issued orders and judgments[4] awarding sanctions to LVNV in the amount of $33,425 and to Wolpoff in the amount of $21,824.50 (collectively, the "Rule 11 Sanctions").

On February 9, 2009, Powers and his wife, Mary, filed for chapter 7 bankruptcy protection. On April 28, 2009, the Plaintiffs filed a complaint (the "Complaint") against Mr. Powers seeking a determination of nondischargeability of Judge Sparks' sanctions orders, pursuant to 11 U.S.C. § 523(a)(6). On June 5, 2009, the Plaintiffs filed this Motion asking the court to apply collateral estoppel to preclude Powers from contesting that his actions in the Class Action Suit, which resulted in the Rule 11 Order and the Rule 11 Sanctions, were "willful and malicious," and to enter judgment that, as a matter of law, the sanctions awards in the Rule 11 Order and the Rule 11 Sanctions are not dischargeable, under § 523(a)(6).

Powers filed a response (the "Response") on June 29, 2009. Powers argues that *collateral estoppel* does not apply here because Powers' conduct in the Class Action Suit, which resulted in the Rule 11 Order and the Rule 11 Sanctions, does not rise to the level of "willful and malicious injury" within the meaning of section 523(a)(6). To quote Powers,

> fact issues established by the three attached certified documents [the Rule 11 Order and the Rule 11 Sanctions and judgment] do not establish a prima facie case supporting the contention that the debt owed to either plaintiff is for a 'willful and malicious injury' as set out in 11 U.S.C. § 523(a)(6) making that debt

---

[4] The order and judgment awarding LVNV sanctions is attached as Exhibits 3 to the Complaint. The order and judgment awarding Wolpoff sanctions is attached as Exhibit 2 to the Complaint.

4

>non-dischargeable or the ownership of the Mann & Bracken LLP to the Wolpoff
>& Abramson L.L.P.'s claim against the defendant.

*Response*, at 2-3. Powers adds that the filing of the Certifications Motion "was not the proximate cause of any injury to the Plaintiff[s]. To the extent they were injured, it was because of the failure to investigate the law or the facts upon which the class certification motion was purported to rest, according to the findings of the District Court." *Id.* at 4.[5] Powers states that Judge Sparks "did not find subjective intent to injure or objective substantial certainty of injury in either order nor were such findings necessary to entry of the resulting judgment. No other evidence of either of these elements of non-dischargeability under 11 U.S.C. § 523(a)(6) are offered in support of he [sic] Motion for Summary Judgment and both facts remain material contested fact issues." *Id.* at 5. Powers asks the court to deny the Plaintiffs' motion.

Powers makes another argument for denying summary judgment. Powers alleges that Mann Bracken has not offered any evidence that it is a successor-in-interest to Wolpoff. Because "[n]o evidence of that fact is offered in support of that allegation and because of that it remains a material contested fact issue…," *Response*, at 5, and summary judgment must, he says, be denied. Mann Bracken filed a reply (the "Reply") on July 6, 2009 and attached an affidavit by Connell A. Loftus (the "Loftus Affidavit"). Mr. Loftus explains that Mann Bracken is the successor by merger to Wolpoff. Mr. Loftus is a lawyer and member of Mann Bracken. In fact, he is the managing officer of Mann Bracken's office in Rockville, Maryland, which, prior to Wolpoff's merger with Mann Bracken, was Wolpoff's office. In the Class Action Suit, Mr. Loftus had authorized outside counsel to file the motion requesting Rule 11 sanctions on behalf of Wolpoff against Powers. Lastly, Mr. Loftus provides that, as successor by merger, Mann

---

[5] As an aside, the court does not buy this argument. Regardless of whether Powers had researched the facts and law, had he still filed the Certification Motion, LVNV and Wolpoff would likely still have had to take the depositions and spent money otherwise objecting to the Certifention Motion. Now, whether Powers *would have* filed the Certification Motion *had* he done his research is another question entirely. And irrelevant to this Motion.

Bracken is the current owner and holder of the Rule 11 judgment against Powers. The court believes that Mann Bracken has met its burden in proving that it is Wolpoff's successor. Powers' objection on this ground is overruled.

**B. DISCUSSION**

*A. 11 U.S.C. § 523(a)(6)*

Section 523(a)(6) provides that "[a] discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – … (6) for willful and malicious injury by the debtor to another entity or to the property of another entity…" *See* 11 U.S.C. § 523(a)(6). The Fifth Circuit had long held that the term "malicious" in the foregoing statutory sentence means "without just cause or excuse" and that "willful" meant that the actor intended to the act which resulted in the injury to the plaintiff. *See Seven Elves v. Eskenazi*, 704 F.2d 241, 245 (5th Cir. 1983). The court somewhat modified that formulation in *In re Delaney,* 97 F.3d 800, 802 (5th Cir. 1996), holding that, "for willfulness and malice to prevent discharge under § 523(a)(6), the debtor must have intended the actual injury that resulted." *Id.* The court added that evidence that the debtor's intentionally performing an action that either necessarily caused or was substantially certain to cause the injury would establish the "intent to injure" element. Thus, conduct designed to cause deliberate or intentional injury satisfies the elements of nondischargeability under § 523(a)(6). *Id.*; *see also In re Walker*, 48 F.3d 1161, 1164 (11th Cir. 1995).

Two years later, however, the Supreme Court decided *Kawaauhaus v. Geiger,* 523 U.S. 57, 118 S.Ct. 974 (1998). The Court there ruled that a plaintiff, to prevail under § 523(a)(6), must prove that the defendant intended to cause the injury in question. Not long after, the Fifth Circuit was asked to examine its standard, as laid out in *Delaney*, in light of the Supreme Court's decision in *Geiger.* In *In re Miller*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit explained its

standard for determining whether a creditor meets the requirements of § 523(a)(6) thusly: "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller*, 156 F.3d at 606.[6] Nine years later, in *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. Appx. 360, 361-362 (5th Cir. 2007), the Fifth Circuit reiterated this "objective/subjective" test and then added a refinement: "for an injury to be 'willful and malicious' it must satisfy our two-part test *and* not be sufficiently justified under the circumstances to render it not 'willful and malicious.'" *Id.* at 362 (emphasis added). The burden of proof of course rests on the creditor seeking relief under § 523(a)(6), and it must be met by a preponderance of the evidence. *In re Pipst*, 2007 WL 274969, at *4 (Bankr. W.D. Tex. Jan. 29, 2007) (*citing Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005).

In his Response, Powers asks this court essentially to overturn *Miller* and to hold instead that the objective prong of the § 523(a)(6) test should not be used. *Response*, at 8-9 ("The *Miller* objective standard is not correct and the subjective standard set at in *Delaney* should be applied.") Powers believes that the purely subjective standard set out in other circuits is the only correct standard to use after *Geiger*. Powers cites as an example *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999), which says that "…unless 'the actor desires to cause [the] consequences of his act, or… believes that the consequences are substantially certain to result from it … he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* at 8 (citing to *Markowitz*). In reply, the Plaintiffs support the *Miller* standard, and point the court to the dissent in the Eighth Circuit's opinion in *In re Geiger*, 113 F.3d 848 (8th Cir. 1997), *aff'd*, 523 U.S. 57,

---

[6] Although *Miller* has been criticized by other circuit courts, *see e.g. Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 2000 U.S. App. LEXIS 22754, at *7-8 (10th Cir. Kan. Sept. 8, 2000) and *Carillo v. Su (in Re Su)*, 290 F.3d 1140, 1145-1146 (9th Cir. 2002), the Fifth Circuit is steadfast in its holding that 'willful and malicious injury' in § 523(a)(6) may be met with either an objective test or a subjective test. *See In re Vollbracht*, 276 Fed. Appx. 360, 361-362 (5th Cir. 2007); *see also Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. Tex. 2003).

118 S.Ct. 974, 140 L.Ed.2d 90 (1998). *Reply*, at 1-2. The Plaintiffs go on to reiterate that, in the Fifth Circuit pursuant to *Miller*, Powers' state of mind is not the only test that a court is to use when determining 'willful and malicious injury' for purposes of § 523(a)(6). Plaintiff Reply Brief, at 2.

Some discussion of *Miller,* its antecendents, and its progeny is in order. In *Geiger*, the Supreme Court found that a debt arising from negligent or reckless conduct does not fall within the 'willful and malicious' language of § 523(a)(6), and so was dischargeable. *Geiger*, 523 U.S. at 59, 64. Said the Court, "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61. Notably, *Geiger* was not explicit regarding whether it was defining the word 'willful,' the word 'malicious,' or both. *Miller*, 156 F.3d at 606. The Fifth Circuit in *Miller* undertook the task of making that part of *Geiger* explicit, at least for this circuit.

In *Miller*, the Fifth Circuit essentially chose to equate the terms willful and malicious. *See generally, Miller*, 156 F.3d 598. The court first took on the term 'willful' which the Fifth Circuit had previously defined in *Delaney*. The court explained that

> *Delaney*, which remains good law because the Supreme Court in no way contradicted it, equated intending actual injury to a situation in which 'the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.'

*Id.* at 604 (citing *Delaney*, 97 F.3d at 802). The *Miller* court said that, in light of *Geiger*'s having eliminated the possibility of that the term 'willful' ever encompassing negligence or recklessness, three readings of the Supreme Court's standard – that there must be intent to cause injury – were possible: (i) any *intentional* tort met the standard, (ii) any tort *substantially certain to result in injury* met the standard, and (iii) any tort *motivated by a desire to inflict injury* met the standard. *Miller*, 156 F.3d at 603 (emphasis added).

8

In evaluating these possibilities, the court first observed that "the label 'intentional tort' is too elusive to sort intentional acts that lead to injury from acts intended to cause injury." *Id.* "Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." *Id.* at 604. This was certainly true with respect to the facts in *Miller* itself, where the debtor/tortfeasor was adjudged liable for misappropriation of proprietary information and misuse of trade secrets. *Id.* Certainly, such a tort is classified as an intentional tort; but the act of the tortfeasor could not be said to have *necessarily* led to an injury to the legal owner of the trade secret. *Id.* Thus, the label 'intentional tort' could not mean, in all cases, 'actual intent to cause injury.' *Id.* at 603-604. The court found a second possibility to be the better choice: "either objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful … injury' in § 523(a)(6)." *Id.* at 603. In adopting this test, the Fifth Circuit noted that the "presence of one of these factors is both necessary and sufficient for a tort to be classified as an 'intentional tort' under the traditional modern definition… [and] [t]his test is fully consistent with our precedent [*Delaney*]." *Id.* at 604. In this way, , the "objective/subjective test" for determining 'willful' was born.

The court then turned to the term 'malicious' noting that, although its meaning … "has long been confused. … the Fifth Circuit so far has taken a clear path, albeit without analysis of the confused jurisprudence." *Id.* at 604-605. Prior to *Geiger*, the Fifth Circuit had "defined 'malicious' as 'without just cause or excuse' … [which is] a species of 'implied malice.'" *Id.* However, *Geiger* re-examined its earlier precedent – *Tinker v. Colwell*, 193 U.S. 473, 48 L.Ed. 754, 24 S.Ct. 505 (1904) – and said that, despite some of *Tinker*'s confusing language, *Tinker* placed the crime at issue in that case "within the traditional intentional tort category, and we so confine its holding." 523 U.S. at 63. *Tinker* is important to *Miller*'s discussion of the meaning of 'malice' because *Tinker* had said that liability for a "'wrongful act, done intentionally, without

9

just cause or excuse' [was not discharged]." *Geiger*, 523 U.S. at 63 (citing *Tinker*, 193 U.S. at 486). Because the Fifth Circuit believed that its own 'without just cause or excuse' definition, which came originally from *Tinker*, had been displaced by the Court's formulation in *Geiger*, the Fifth Circuit could no longer retain that definition for 'malicious.' *Miller*, 156 F.3d at 605-606. Instead, the court adopted the 'implied malice' meaning.' *Id.* at 606. And, because 'implied malice' is the same as the *Geiger* definition of 'willful,' *i.e.* "'acts done with the actual intent to cause injury,'" *Id.*, the court equated the meaning of 'willful' and the meaning of 'malicious' and so held that an "injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Id.*

*Miller*'s objective test has been heavily criticized by other circuits. For instance, in an unpublished opinion, the Tenth Circuit said that it believed *Miller's* objective standard to be not only inconsistent *Geiger*, but also internally inconsistent. *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 2000 U.S. App. LEXIS 22754, at *7-9 (10th Cir. Kan. Sept. 8, 2000). The Ninth Circuit criticized *Miller* because, in its view, the objective portion of *Miller*'s test

> disregards the particular debtor's state of mind and considers whether an objective, reasonable person would have known that the actions in question were substantially certain to injure the creditor. In its application, this standard looks very much like the 'reckless disregard' standard used in negligence. That the Bankruptcy Code's legislative history makes it clear that Congress did not intend § 523(a)(6)'s willful injury requirement to be applied so as to render nondischargeable any debt incurred by reckless behavior, reinforces application of the subjective standard. The subjective standard correctly focuses on the debtor's state of mind and precludes application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual knowledge that harm to the creditor was substantially certain.

*Carillo v. Su (In Re Su)*, 290 F.3d 1140, 1146 (9th Cir. 2002) (citing, *inter alia*, to the Restatement (Second) of Torts § 500 cmt. a for its definition of 'recklessness').

10

Other circuits, then, believe that the Fifth Circuit has re-introduced recklessness as a sufficient level of *scienter* to support a finding of malice under section 523(a)(6). But that might not be the case. In 2007, the Fifth Circuit decided *In re Vollbracht*, 276 Fed. Appx. 360 (5th Cir. 2007). There, the court reiterated its objective/subjective test from *Miller*[7] but then elaborated on the true import of that test. The court in *Vollbracht* explained that "[b]ecause debtors generally deny that they had a subjective motive to cause harm, most cases that hold debts to be non-dischargeable do so by determining whether '[the debtor's] actions were at least substantially certain to result in injury.'" *Id.* at 362. In other words, the Fifth Circuit's own reading of the objective prong of the test is that it is not actually an objective test at all. Instead, this prong should be understood as essentially evidentiary in nature and import, a kind of marker or "badge of intent," something akin to a badge of fraud.[8] In other words, objective substantial certainty as described by the circuit court in *Delaney* and *Miller* is not actually another way to say "reckless." Instead, it is a recognition of the evidentiary reality that defendants rarely admit malicious intent. A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's <u>subjective</u> intent was to inflict a willful and malicious injury on the plaintiff.

Of course, this court has no authority to "overrule" the Fifth Circuit. Only the circuit itself can overrule its own precedents. *See In re Orso,* 214 F.3d 637, 641 n.5 (5th Cir. 2000), *rev'd on other grounds on rehearing en banc,* 283 F.3d 686 (5th Cir. 2002); *see also* 5th Cir. R.

---

[7] As noted above, in *Vollbracht*, the Fifth Circuit also added another prong in determining 'willful and malicious' injury: to be willful and malicious, an injury "must satisfy our two-part test and not be sufficiently justified under the circumstances to render it not 'willful and malicious.'" *Vollbrecht*, 276 Fed. Appx. at 363.

[8] Similar to intent, actual fraud is extremely difficult to prove because it is based upon the bad actors' state of mind. For this reason, the Fifth Circuit allows six badges of fraud to be used to assist courts to infer bad intent based upon circumstantial evidence. *See e.g. Neary v. Guillet (In re Guillet)*, 2008 Bankr. LEXIS 2971, at *40-41 (Bankr. E.D. Tex. 2008) (*citing Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 702 (5th Cir. 2003).

35; *see Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 832 (5th Cir. 2000) ("We are a 'strict stare decisis court. [Thus], . . . one panel of this court cannot disregard, much less overrule, the decision of a prior panel.' This rule remains immutable even when the prior panel's decision involved the interpretation of state law because, 'such interpretations are no less binding on subsequent panels than are prior interpretations of federal law.' Therefore, a prior panel's interpretation of state law has binding precedential effect on other panels of this court absent a subsequent state court decision or amendment rendering our prior decision clearly wrong." (citations omitted)). Even if the court could do so, however, it has not inclination to do so in this case. The court agrees with *Vollbracht* and its reading of the objective prong as a direction to lower courts to attend to "badges of intent" that may be evidenced by actions having a substantial certainty to result in harm.

Powers argues that the reasoning in the *Miller* case is faulty because the Fifth Circuit did not there consider its prior precedent in *Delaney*. But as we have noted, the *Miller* court expressly *did* discuss *Delaney* – and not merely in passing.[9] In fact, one paragraph after discussing *Delaney*, the Fifth Circuit noted that, despite the fact that the defendant in the *Miller* case – Miller – had not been found guilty of acting with 'malice' or 'evil motive' in the trial court (thereby defeating the subjective prong of the § 523(a)(6) requirement), "Miller's conduct, however, could still be 'willful' under the objective standard, if his acts were substantially certain to result in injury to Abrams [the plaintiff]." *Id.* at 604.

The court, in short, finds both *Miller* and *Vollbracht* to be both binding and correct. They will be followed in this case.

---

[9] For example, the Fifth Circuit noted that the Supreme Court's ruling in *Geiger* "was similar to one that the Fifth Circuit had reached in analyzing § 523(a)(6) [in *Delaney*]." *Miller*, 156 F.3d at 603. *Miller* went on and said "*Delaney*, which remains good law because the Supreme Court in no way contradicted it, equated intending actual injury to a situation in which 'the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.'" *Id.* at 604.

12

*B. Standards for Summary Judgment, Collateral Estoppel, and Rule 11 Sanctions*

Federal Rule of Civil Procedure 56(c), made applicable in adversary proceedings in bankruptcy cases by Federal Rule of Bankruptcy Procedure 7056(c), states the standard for consideration of a motion for summary judgment. Summary judgment is to be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, courts must determine if there are any material factual issues to be tried, while at the same time, because the non-moving party would be precluded from a trial if the relief was granted, the court should resolve ambiguities and draw reasonable inferences against the moving party. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2nd Cir. 1986).

The non-moving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to material fact in support of a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48. That is, "the mere existence of a scintilla of evidence in support of a [non-movant's] position will be insufficient. There must be evidence on which a jury could reasonably find for the [non-moving party]." *Id.* The non-moving party may not defeat a summary judgment motion by relying on self-serving or conclusory statements. There must be something more than some metaphysical doubt as to a material fact. That is, there needs to be evidence of a material fact at issue, although, of course, once that evidence is shown the Court moves on to the trial stage. That is, the evidence need not be probative at the summary judgment stage. *See generally Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

It is without question that the doctrine of collateral estoppel may be applied in a § 523(a)(6) action. *Wash v. Moebius (In re Wood),* 167 B.R. 83, 85 (Bankr. W.D.Tex. 1994).

13

There are three requirements for collateral estoppel under federal law: "'(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.'" *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 868 (5th Cir. 2000) (citations omitted). To determine whether to apply *collateral estoppel* in a given case,

> the Bankruptcy Court must have before it sufficient portions of the prior record in order to be able to determine that the subsidiary facts were actually litigated and necessarily determined by the prior court. 'If the prior record sufficiently established the subsidiary facts on which the judgment was based, the court then independently determines whether these subsidiary facts establish the elements of nondischargeability as defined by federal bankruptcy law.'

*In re Wood*, 167 B.R. at 85; *see In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005) ("'collateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue – and the facts supporting the court's finding are discernable from that court's record.'" *Id.* (*citing Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994)).

Notably, an analysis of collateral estoppel is <u>not</u> an invitation for a party to re-litigate the issue already decided by the previous court or, for that matter, to collaterally attack the previous court's ruling. To even advocate that "a final judgment obtained prior to the commencement of a bankruptcy case can be reopened by [a bankruptcy] court and in effect retried makes no sense… 'Bankruptcy proceedings may not be used to re-litigate issues already resolved by a court of competent jurisdiction.'" *John Labatt Ltd. v. Messina (In re Messina)*, 2000 Bankr. LEXIS 225, at *18 (Bankr. N.D. Ill. Mar. 27, 2000) (citations omitted). Thus, the court must reject as irrelevant, for purposes of this court's consideration of summary judgment premised on collateral

estoppel, Powers' <u>affidavit</u> [Docket No. 13] in which Powers appears to be arguing that his Certification Motion did not violate Rule 11. The Rule 11 Order and Rule 11 Sanctions are final orders and they cannot be revisited – certainly not by this court, as that would be constitute a collateral attack. In our collateral estoppel analysis, we examine those orders not to re-litigate them but rather to determine whether those orders evidence that all the elements of § 523(a)(6) were already actually litigated there. If they were, then it is Powers who would be estopped from re-litigating any § 523(a)(6) issues in this court. Powers is of course already estopped – by *res judicata* -- from relitigating the sanctions rulings of Judge Sparks. With these cautions in mind, we turn to a substantive consideration of the sanctions orders to determine whether collateral estoppel should bar relitigation of § 523(a)(6) issues.

As a general observation, a Rule 11 sanction *may* be sufficient collaterally estop a party from litigating the elements of a § 523(a)(6) action. *In re Wood*, 167 B.R. 83; *Foran v. Lutz (In re Lutz)*, 169 B.R. 473 (Bankr. S.D. Ga. 1994); *see also In re Keaty*, 397 F.3d 264.[10] Powers admits as much. *See Response*, at 9-10. Powers argues rather that Judge Sparks' findings in his sanctioning orders are insufficient to permit this court, simply by looking at those orders, to conclude that Judge Sparks already found Powers' actions to constitute willful and malicious injury to the Plaintiffs.[11] Federal Rule of Civil Procedure 11 generally prohibits parties and/or

---

[10] The Fifth Circuit in *Keaty* faced the issue of whether a lawyer, who was also a debtor in bankruptcy, sanctioned pursuant to Louisiana state law, LA. CODE CIV. PROC. ANN. Art. 863 (West 1984), was collaterally estopped from arguing that the actions which formed the basis of the sanction did not meet the § 523(a)(6) standards. The Fifth Circuit held not only that the elements of *collateral estoppel* were met but also that the state court's findings were sufficient to award summary judgment in favor of the plaintiff. The Fifth Circuit concluded that the debt resulted from a willful and malicious injury and, under the doctrine of issue preclusion, the debtor was barred from re-litigating the matter in the bankruptcy court.

[11] Powers argues states that "[n]o ultimate fact issue relevant to U.S.C. § 523(a)(6) was litigated or found in either of the Orders being offered for possible Collateral Estoppel effect." *Response*, at 9. At first glance, this may seem to be an argument that Rule 11 sanctions cannot meet the elements of *collateral estoppel*, but the very next sentences belie such a reading. Powers states that the Rule 11 Order and Rule 11 Sanctions do not meet the subjective test of § 523. *Id.* ("'bad motive' / 'bad faith' basis for Rule 11 or § 1926 [sic] liability were never pled or argued by Plaintiff and in fact they argued that 'bad faith' was expressly not a requirement the court would have to find. Given the total absence of any finding regarding 'subjective intent to injury' [sic] there is no collateral estoppel effect of the proffered orders upon which summary judgment could be granted…" *Id.*). Powers goes on to make a similar

attorneys from filing or making deliberately false pleadings or arguments to a court. More specifically, Rule 11(b) provides:

> **Representations to the Court**. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED.R.CIV.P. 11(b). The purpose of Rule 11 was for lawyers to "'stop-and-think' before … making legal or factual contentions." *Jenkins v. Methodist Hosps.*, 478 F.3d 255, 265 (5th Cir. Tex. 2007) (citing the Advisory Committee Notes on FED.R.CIV.P. 11 (1993 Amendments)). "'[T]he standard under which the attorney is measured [under Rule 11] is an objective, not subjective, standard of reasonableness under the circumstances'. Accordingly, an attorney's good faith will not, by itself, protect against the imposition of Rule 11 sanctions." *Jenkins*, 478 F.3d at 264 (citations omitted); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. Miss. 2003). Although a court has the discretion to fashion a sanction, the punishment must fit the crime, so to speak. *Id.* at 265 ("Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose.")

---

argument with respect to the objective prong of the § 523(a)(6) test. Consequently, the court reads Powers' arguments to be that the findings of fact in Judge Sparks' orders are such that, on summary judgment, the court cannot find that Powers' actions caused 'willful and malicious injury' for purposes of § 523(a)(6).

The fact that Rule 11 sanctions might have been issued against an attorney is thus, of itself, insufficient to conclude that the conduct sanctioned must have been willful and malicious within the meaning of § 523(a)(6). After all, conduct might not pass muster under an objective standard of reasonableness, yet not (at least as a matter of law) *necessarily* count as willful and malicious conduct under *Miller* as interpreted by *Vollbracht.* Only if the findings of the court are sufficient to show that the conduct amounted to a "badge of intent" would it then be good enough to ring the nondischargeability bell under § 523(a)(6). It all depends upon the findings of fact made by the judge imposing sanctions in the first place. The question the bankruptcy judge must answer is whether the debtor/defendant was sanctioned for actions that were either (i) objectively substantially certain to result in harm such that they should be construed to be a badge of intent or (ii) motivated, in the mind of *this* debtor/defendant, by an intent to inflict such harm on the plaintiff. For collateral estoppel to attach, the prior court must have made such findings. *See In re Keaty*, 397 F.3d at 273. In *Keaty*,[12] the Fifth Circuit found that the findings made by the Louisiana state court[13] in sanctioning Keaty "unquestionably satisfy the elements of § 523(a)(6)." *Id.* at 273. The Louisiana court had said:

---

[12] This court recognizes that *Keaty* is not on all fours with this case because *Keaty* did not deal with a sanction under Rule 11. However, the court nonetheless believes *Keaty* to be relevant and applicable to these proceedings because the manner in which the Fifth Circuit *applied* the state sanction to § 523(a)(6) is directly relevant. Additionally, the language of the state court sanction that the Fifth Circuit emphasized in *Keaty* is instructive for our purposes here.

[13] The Louisiana Civil Code statute upon which the Louisiana court relied in sanctioning Keaty reads:

> Art. 863. Signing of pleadings, effect
>
> A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name . . . .
>
> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> We find that the Keatys knew and must have known all along that their claim for tortious interference had prescribed. We find that the Keatys knew that all of their claims against the Byrds were disposed of in the Bossier Parish proceedings. . . . We find that the Keatys' answers to Raspanti's request for admissions, in which they denied the non-existence of a contract between them and Raspanti, was disingenuous. We find that the entire proceedings by the Keatys against Raspanti was knowingly without foundation, crafted for purposes of harassment and carried out in a manner designed to deliberately prolong the proceedings needlessly.

*Id.* at 273-274. Based upon this language, the Fifth Circuit said:

> These are clear and specific findings as to Keaty's state of mind. They demonstrate that Keaty's motive in filing the frivolous claim for attorney's fees was to injure Raspanti (by harassing him). They also demonstrate that Keaty's actions were substantially certain to injure Raspanti, since deliberately and needlessly prolonging the proceedings would necessarily cause Raspanti financial injury.

*Id.* at 274. Similarly, in both *Lutz* and *Wood*,[14] where the bankruptcy courts both applied collateral estoppel to a Rule 11 sanction for purposes of § 523(a)(6), the language of the respective Rule 11 orders was very specific and addressed the debtor/defendants' bad intent. In *Lutz*, the bankruptcy court noted that the district court had expressly found that "the Debtor and his co-plaintiff deliberately fabricated the events upon which the suit was based… [the] Debtor's sole purpose in bringing the suit was to extract money from the Plaintiffs." 169 B.R. at 478-479. The *Lutz* court believed that the district court's findings of fact clearly show that the "Debtor acted in a deliberate and intentional manner in bringing the suit…" *Id.* Likewise, in *Wood*, the bankruptcy court noted that the district court in the prior case had found

> as a matter of fact that with regard to the Plaintiff Wash, the Defendant Moebius caused pleadings to be filed 'for the purpose of harassing', 'without having first

---

LA. CODE CIV. PROC. ANN. art. 863 (West 1984). And, interestingly, the objective standard that applies to both Rule 11 and § 523(a)(6) is also applicable to a determination of whether a lawyer should be sanctioned under Louisiana law. *Id.* at 273. The Fifth Circuit noted that "[b]oth § 523(a)(6) and the Louisiana statute require an inquiry into whether Keaty acted either with an objective substantial certainty of injury (to cause unnecessary delay) or a subjective motive to cause injury (to harass or to increase the cost of litigation needlessly)." *Id.* at 273. Thus, as noted above, even though *Keaty* was analyzing the collateral effect of a Louisiana statute, its analysis is very relevant for this court's analysis in this matter.

[14] Both of these cases were decided before *Geiger*. Therefore, the standards both cases applied for purposes of meeting § 523(a)(6) are no longer valid for this case. However, certainly, the reasoning of both courts is still valid.

> conducted a reasonable inquiry into the factual basis of those claims', 'with full knowledge of, or wanton and reckless disregard for, the absence of any facts to support the same', which conduct 'demonstrates an abuse of legal process by' Moebius and that all of such action was 'motivated by improper purpose'.

167 B.R. at 86-87. Thus, based upon these findings, the bankruptcy court held that the debtor/defendants' actions as found by the district court met the elements of § 523(a)(6) and so granted summary judgment. *Id.* at 87.

Here, by contrast, Judge Sparks did *not* make the requisite specific findings that would permit the court to find collateral estoppel should apply. Judge Sparks' orders do not state that Powers knew or should have known[15] that by filing the Certification Motion he would injure the Plaintiffs, or, even that Powers was motivated by an improper purpose. Judge Sparks states that "Powers represents a very real danger to putative class members…," *Rule 11 Order* at 3; but the putative class members are not the Plaintiffs. In the Rule 11 Sanctions, Judge Sparks stated that "it is appropriate to sanction Powers under Rule 11 in order to deter his dangerous and wasteful behavior and future baseless filings." *Rule 11 Sanctions*, at 4. These are worthy purposes that justify the imposition of sanctions under Rule 11. They do not, of themselves, also satisfy the elements for nondischargeability under § 523(a)(6). There is simply no indication in Judge Sparks' findings that Powers – either subjectively or objectively – actually intended to harass or otherwise injure the Plaintiffs or the legal process by filing the Certification Motion. Powers indeed may *have* intended to harass the Plaintiffs by filing the Class Action Suit, but Powers was

---

[15] Judge Sparks references a prior sanction imposed upon Powers by Judge Hinojosa. *Rule 11 Order*, at 5. Additionally, the Plaintiffs alleged in their motions requesting Rule 11 sanctions (attached to Powers' Response as Exhibits 1 and 3) that Powers has been previously sanctioned pursuant to Rule 11 in another case. Although the court is tempted to assume that Judge Hinojosa's order and the Rule 11 sanctions referenced by the Plaintiffs in their respective motions is one in the same, assumptions simply have no place in a court of law. But, even assuming that Judge Hinojosa's sanction was also based upon Rule 11, as far as the court knows, it is not part of the summary judgment record and, consequently, cannot be considered for purposes of finding that Powers, objectively, was substantially certain that if he filed the Certification Motion, he would willfully and maliciously injure the Plaintiffs. In other words, Judge Hinojosa's reasons for sanctioning Powers under Rule 11 could have been entirely different than Judge Sparks' reasons. Thus, Powers – or any attorney – would not have necessarily been substantially certain that, in filing the Certification Motion, he would have injured the Plaintiffs.

<u>sanctioned</u> for filing the Certification Motion.) Although Judge Sparks very strongly admonishes Powers' failure to investigate either the law or the facts, this court does not believe that either the Rule 11 Order or the Rule 11 Sanctions contain finding sufficient to support the conclusion that, by filing the Certification Motion, Powers' intended to willfully and maliciously injure the Plaintiffs. Thus, the court denies the Plaintiffs' Motion for summary judgment on the basis of collateral estoppel.[16]

**C. CONCLUSION**

For the reasons stated above, the Plaintiffs' Motion for summary judgment is denied. The Plaintiffs will have to prove the elements of § 523(a)(6) at trial.

---

[16] It is always worth remembering at this stage that the court has only ruled that a trial is necessary to determine whether, under the standards in *Miller* and *Vollbracht*, the defendant's conduct that led to the sanctions orders was willful and malicious. The court has not, at this stage, made any findings one way or another on that question. The court has only here ruled that, though Judge Sparks certainly sanctioned Powers in no uncertain terms, he did not, with a certainty make findings on whether Powers' conduct was willful and malicious as those terms are used in § 523(a)(6) and are construed by the Fifth Circuit.